HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SUGAR FINANCIAL GROUP, INC.,

Plaintiff,

v.

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

Defendant.

Case No. C07-5398-RBL

ORDER ON SUMMARY JUDGMENT MOTIONS

This matter is before the court on the parties' cross Motions for Summary Judgment. [Dkt. #s 12 and 16]. At issue is the availability of insurance coverage for the loss of a private aircraft owned by the Plaintiff and insured by the Defendant. Plaintiff seeks a ruling that certain exclusions in the Policy do not apply. Defendant seeks a ruling that the Policy does not cover the loss, and seeks dismissal of Plaintiff's claims. The material facts are virtually undisputed, and the Defendant is entitled to judgment as a matter of law. The Defendant's Motion [Dkt. #16] is GRANTED, the Plaintiff's Motion [Dkt. #12] is DENIED, and the Complaint [Dkt. # 1] is DISMISSED with prejudice.

**1.    Factual Background**.

Plaintiff Sugar Financial Group, Inc. is an Arizona corporation owned equally and entirely by Mr. R.J. Petershagen (the company's president) and Mr. Martin Ayers (the company's vice–president). In August 2005, Sugar purchased a 1978 Cessna 421 twin engine aircraft. Mr. Ayers decided the aircraft would be based in Scottsdale, Arizona, where he was taking flying lessons. Sugar subsequently purchased an Aircraft Insurance Policy from the Defendant, The Insurance Company of the State of Pennsylvania (a

member of the American International Group ("AIG")). The Policy was actually issued by another AIG member, AIG Aviation, and had an effective period of November 1, 2005 to November 1, 2006.

The Policy included three coverages:

A. Aircraft Liability Single Limit, for Bodily Injury and Property Damage including passengers [limited to $1,000,000 per occurrence.]
B. Medical Expense including crew, $1000 each passenger.
C. Physical Damage to [the] Aircraft.

The Agreed Value of the aircraft itself was $400,000. [*See* page 6 of Ex. A to Petershagen Dec.; Dkt. #13].

Item 5 of the Policy's Coverage Summary Page provided that "while the aircraft is in flight it will be piloted only by the persons meeting the provisions of the "Pilots Endorsement". [*See* page 6 of Ex. A to Petershagen Dec.; Dkt. #13]

The Policy's "Pilots Endorsement"[1] provided that

A) While the aircraft is in flight it will be piloted only by the persons specifically named as pilot(s) for your aircraft listed below

* * *

Dan Gimbal
Clive D Martin

The Pilots Endorsement also provided that

B) The Aircraft may also be piloted by any person who has your [Sugar's] permission and has

1. A current and valid FAA Private, Commercial, or ATP pilot certificate rating and endorsements applicable to your aircraft, including an instrument rating[;]

* * *

4. at least:

<u>1000</u> total logged hours as pilot-in command of aircraft, of which includes the following hours in the aircraft described below:

<u>50</u> hours same make and model as your aircraft
<u>500</u> hours multi-engine powered fixed wing aircraft.

[*See* pages 18 and 36 of Ex. A to Petershagen Dec.; Dkt. #13].

Part Two of the Policy included a number of exclusions, two of which (Nos. 1(c) and 7(d)) are at

---

[1]Two versions of this document were included in the Policy. Endorsement No. 1 named Dan Gimbal as the specified pilot; Endorsement No. 10 (reflecting payment of an additional premium) also named Clive D. Martin as a pilot. [*See* pages 18 and 36 of Ex. A to Petershagen Dec.; Dkt. #13]. The parties apparently agree that these two pilots were permitted to pilot the aircraft, and neither was aboard when it crashed.

ORDER
Page - 2

issue here. The Policy provided:

> This insurance does not apply:
> 1.    under any coverage
>
> * * *
>
> c)   when the aircraft is in flight:
>   i)    with your knowledge and consent for either an unlawful purpose or for other than the Approved Use;
>   ii)   when a special permit or waiver is required by the FAA;
>   iii)  if piloted by anyone other than:
>
>   (1)   a pilot specified in Item 5 [which is informed by the Pilot Endorsement(s)];
>   (2)   a pilot employed by an FAA approved repair station while the aircraft is in their care, custody or control for the purpose of maintenance, repair or test flight.
>
> * * *
>
> 7.    under Coverage C [physical damage to the aircraft]:
>
> * * *
>
> d)   to loss due to repossession, embezzlement, conversion, secretion or taking by anyone claiming a lawful right of possession, nor for any loss or damage during or resulting therefrom.

[*See* pages 10 and 11 of Ex. A to Petershagen Dec.; Dkt. #13]

On January 25, 2006, Mr. Ayers took off alone in the aircraft, on a trip from Scottsdale to Tacoma, Washington. He had a private pilot's license and was certified to fly multi-engine aircraft like Sugar's Cessna 421. He did not have an "instrument rating;" he was not certified to fly under Instrument Flight Rules (IFR). On that date, he had, at most, 400 hours total flight time.

Mr. Petershagen testifies that neither he nor Sugar knew of nor authorized[2] this solo flight, but acknowledges he knew the aircraft was to be flown to Tacoma. He claims that it was "understood" that Mr. Ayers was not to fly solo.[2] In any event, Mr. Ayers was alone. He encountered IFR conditions in Washington State; bad weather, icing, poor visibility, and turbulence. The aircraft crashed and was destroyed, and Mr. Ayers was killed.

Sugar filed this action seeking coverage for the agreed value of the aircraft. It now seeks summary judgment that the Policy Exclusions cited by AIG in denying coverage do not apply. Defendant AIG also

---

[2] AIG moves to strike as hearsay the portion of Mr. Petershagen's Declaration attributing statements or "acknowledgment" to Mr. Ayers. While this testimony may be hearsay, given the outcome of the Summary Judgment Motions, the court will not strike this testimony.

1  moves for summary judgment, arguing that the Policy does not cover the loss of the aircraft under the
2  largely agreed facts of the case. The parties agree that the substantive law of Arizona applies.
3  **2.      Summary Judgment Standard**.
4       Summary judgment is appropriate when, viewing the facts in the light most favorable to the
5  nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a
6  matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the
7  non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on
8  file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,
9  324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is
10 not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual
11 disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a
12 motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other
13 words, "summary judgment should be granted where the nonmoving party fails to offer evidence from
14 which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.
15 **3.      Discussion**.
16       **A.      Exclusion 1(c) is not ambiguous**.
17       Sugar argues that coverage for the loss is not excluded under the Policy because Exclusion 1(c) is
18 ambiguous. It argues that because the three subparts of exclusion 1(c) are not connected by the word "or"
19 OR the word "and," it is ambiguous. As a result, Sugar claims, the exclusion's subparts should be
20 construed conjunctively, rather than disjunctively, requiring the presence of *all three* enumerated
21 conditions for the exclusion to apply. In other words, Sugar argues that the exclusion only applies if a loss
22 occurs in flight when (1) Sugar knows of and consents to an unlawful or non-Approved Use of the aircraft;
23 AND (2) a special waiver or permit is required by the FAA; AND (3) the aircraft is piloted by anyone other
24 than (i) someone listed on the Pilots Endorsement or[3] (ii) authorized repair personnel.
25       Put yet another way, Sugar argues that the Policy Exclusion applies *only* where Sugar knows of

---

27,28 [3]Presumably, Sugar would concede that this "or" is properly read into the Exclusion; if it is read as an "and," a loss occurring during any flight piloted by Gimbal or Martin would not be covered unless the pilot was *also* "employed by an FAA approved repair station, while the aircraft is in their care custody or control for purposes of maintenance, repair, or test flight." [Exclusion 1(c)(iii)]. This demonstrates the error of reading the Exclusion as Sugar advocates.

ORDER
Page - 4

1 and consents to the operation of the aircraft by someone other than an authorized pilot, for something
2 other than a legal or authorized use, under conditions requiring a special permit or waiver from the FAA.
3 In the absence of each of these factors, it argues, the Policy provides coverage.

4 Sugar argues that the exclusion, when read this way, does not apply to the loss; it did not know of
5 or consent to Mr. Ayers' solo flight (subpart (i)), and no special FAA permit was required (subpart ii). It
6 must and does concede that Ayers was not a "specified pilot" under either subsection of the Pilots
7 Endorsement, and was not an authorized repair or maintenance pilot.

8 Sugar's interpretation is based on its reading of Arizona law that where a policy provision,
9 particularly an exclusion, may be read in more than one way, the construction most favorable to the insured
10 must be applied. (Plaintiff's Motion at pp. 6-8, [Dkt. #12]; *citing Roberts v. State Farm Fire and Cas.*
11 *Co.*, 705 P.2d 1335 (1985)).

12 AIG argues that Sugar's construction of the Policy is nonsensical, and would lead to absurd results.
13 It claims that the risks enumerated in the exclusion are by their nature disparate and therefore should be
14 read in the disjunctive. It also points out that *none* of the Policy's exclusions (contained in Part Two) are
15 connected by the word "or" or the word "and," and that the logical implication of Sugar's argument is that
16 a loss is only excluded if ALL of the various conditions enumerated in each exclusion are present at the
17 time of the loss. AIG argues that there is no legal or logical support for the conclusion that the Policy
18 contains only one "super exclusion" because no real life scenario can or would incorporate all of the
19 elements of each exclusion simultaneously. Indeed, many of the exclusions are mutually exclusive.

20 AIG points out that Arizona law does not require a court to reflexively construe an allegedly
21 ambiguous policy exclusion in the manner most favorable to the insured. Instead, the court must first
22 determine the meaning of an apparently ambiguous exclusion by "examining the purpose of the exclusion in
23 question, the public policy considerations involved and the transaction as a whole." *Ohio Cas. v.*
24 *Henderson*, 939 P,2d 1337 (1997). Furthermore, Arizona law prohibits creating an ambiguity where none
25 exists to find coverage. *See Sec. Ins. Co. v. Andersen*, 763 P.246, 248 (1988).

26 The court agrees that reading the Policy exclusions as Sugar advocates would result in an
27 absurdity. Under Sugar's analysis, AIG agreed to cover any loss of the aircraft unless a host of wholly
28 unrelated, highly unlikely conditions occurred simultaneously. The fact that the pilot was not listed or even
trained, or the use was not authorized or even legal, would nevertheless result in coverage. This reading

1   would not permit AIG to calculate or limit its risk, and the ultimate result of such a reading would be to
2   deprive the public of aircraft insurance entirely.

Because the court rejects Sugar's interpretation of Arizona law and the Policy, it need not delve into the finer point of whether or not Sugar (owned 50% by vice-president Ayers himself) "knew of or consented to" Mr. Ayers' solo flight. Policy Exclusion 1(c) is not ambiguous and is not fairly read as Sugar advocates. Whether or not Sugar authorized the flight, the aircraft was piloted by a person who was not "specified" on the Pilots Endorsement a the time of the loss.

Exclusion 1(c) clearly applies to the circumstances surrounding the loss of the aircraft, and Defendant's denial of coverage on this basis was correct. The Policy does not provide coverage for the loss of the aircraft under the essentially agreed facts of this case.

The Plaintiff's Motion for Summary Judgment on this issue is therefore DENIED, and the Defendant's Motion for Summary Judgment is GRANTED.

**B.     Exclusion 7(c) does not apply.**

AIG relies on Exclusions 7(c) as an alternative basis for denying coverage. It argues that if Sugar did not consent to or authorize Mr. Ayers' solo flight, then his use of it amounts to "conversion" or "taking by [someone] claiming a lawful right of possession," and that physical damage to the aircraft is excluded from coverage.   AIG seems to recognize that this exclusion is not a good fit to the actual facts of the loss. Because Exclusion 1(c) clearly applies, the court need not and will not address whether Mr. Ayers' flight was authorized, and whether that fact leads to the conclusion that his flight amounted to "conversion" of the aircraft.

The Plaintiff's Complaint is accordingly DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 28th day of March, 2008.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE